IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 13, 2005 Session

## JAMES K. CANNON v. LOUDON COUNTY, TENNESSEE, ET AL.

Appeal from the Circuit Court for Loudon County
No. 7112     Russell Simmons, Jr., Judge

No. E2004-02995-COA-R3-CV  - FILED DECEMBER 20, 2005

The issue presented in this slip-and-fall case is whether the trial court erred in ruling that the Plaintiff and Defendants were each 50% at fault and dismissing the Plaintiff's lawsuit.  While incarcerated in the Loudon County jail, James K. Cannon slipped on a floor wet from rainwater leaking through the ceiling and window frame of his cell. Because we find that (1) Defendants were responsible for creating the hazardous condition, and had prior notice of the hazardous condition and opportunity to remedy it but did not, and (2) Mr. Cannon had little, if any, opportunity to avoid the known risk of walking to the bathroom on a wet floor in rubber "flip-flop" type sandals, we reverse the trial court's finding that Mr. Cannon was 50% at fault.  We hold the evidence preponderates in favor of a finding that Defendants were 100% at fault in the accident causing Mr. Cannon's injury, and remand the case for a determination and award of damages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;
Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court.  CHARLES D. SUSANO, JR., J., concurred in a separate opinion. HERSCHEL PICKENS FRANKS, P.J., filed a dissenting opinion.

Patrick T. Phillips, Knoxville, Tennessee, for the Appellant, James K. Cannon.

Hanson R. Tipton, Knoxville, Tennessee, for the Appellees, Loudon County, Tennessee and Sheriff Tim Guider.

**OPINION**

*I. Factual and Procedural Background*

On August 23, 2002, James K. Cannon, an inmate at the Loudon County jail, was housed with seven or eight other inmates in a room originally designated as a "recreation room" of the jail. At that time, the jail was undergoing renovations that included the addition of a second story to the

existing structure. Because of the construction, the jail's roof frequently leaked when it was raining. On the evening of August 23, 2002, the floor of the recreation room was wet from rainwater that had leaked in from the ceiling and around the window frame in the room.

At approximately 12:57 AM on August 24, 2002, Mr. Cannon got up from his floor sleeping mat and slipped in water on the floor of his cell. He suffered a broken right ankle and was taken to the emergency room. Following reconstructive surgery and a two-week stay in the hospital, Mr. Cannon was on crutches for approximately five months. Mr. Cannon sustained a permanent injury as a result of the fall.

On August 22, 2003, Mr. Cannon brought this negligence action against Loudon County, Tennessee and Tim Guider in his official capacity as Loudon County Sheriff. He alleged that a water leak existed in the jail which caused rainwater to accumulate on the floor of the room where he was confined. Mr. Cannon further alleged that the Defendants had actual or constructive notice of the leak and wet floor, and that they failed to take reasonable steps to remedy the dangerous condition, thereby exposing him to an unreasonable risk of harm. The complaint further alleged that the Defendants "have a lawful duty to provide and pay for reasonable and necessary medical care to the plaintiff by virtue of [his] incarceration in the Loudon County jail."

The case was tried without a jury on November 12, 2004. The trial court filed a memorandum opinion making the following findings:

> The Court finds. . . that the inmates and jail personnel were all aware that when it rained there would be leaks that could cause water to be on the jail floor creating a dangerous condition.
>
> The plaintiff testified that on August 23, 2002 the rain and leaks had caused water to collect around the door to the restroom. The third [*sic*: second] shift which worked from 4:00 PM till 12:00 PM had been told three times about the water, and even though a request was made for a mop and bucket, no mop and bucket were brought. . . .The Court finds that the Defendant's employees did have notice of the dangerous conditions, and they had sufficient time to have taken some action to remedy the condition. The Court finds the employees of the defendant were at fault in this case.

The trial court found Mr. Cannon was also at fault in the accident, reasoning as follows:

> The testimony indicates that the plaintiff knew the water was on the floor the day he fell, and that he knew the danger of walking in the water because on that date another inmate fell before he did, and in addition the plaintiff had fallen on a previous date. Even with this

knowledge the plaintiff walked across the water knowing he could slip and fall in it.

The trial court held "the defendants' fault to be 50% and the plaintiff's fault to be 50%" and dismissed the lawsuit. Subsequently, Mr. Cannon filed a motion for additional findings of fact and conclusions of law asking for additional findings regarding medical expenses. Mr. Cannon argued that Loudon County was under a statutory duty to pay his reasonable and necessary medical expenses. In response to the motion, the trial court entered an order on March 24, 2005, finding: "Cannon was a state prisoner incarcerated in a county jail within the meaning of § 41-4-115(b)[,]"; (2) the $42,615.38 in medical expenses incurred by Cannon were both reasonable and necessary; and (3) these medical expenses were "incurred for emergency hospitalization and medical treatment rendered to a state prisoner within the meaning of T.C.A. § 41-4-115." The court then concluded T.C.A. § 41-4-115(a) placed a duty on Loudon County to provide medical attention and treatment for plaintiff and that the County is liable for the $42,615.38 in medical expenses, and further that T.C.A. § 41-4-115(b) provides a mechanism through which Loudon County may seek reimbursement from the State for these expenses.

## II. Issue Presented

Mr. Cannon appeals, raising the issue of whether the trial court erred in concluding he was 50% at fault for the accident and barring his recovery for injuries sustained in the fall. Loudon County argues on appeal that the trial court erred in holding it liable for Mr. Cannon's medical expenses pursuant to T.C.A. § 41-4-115.

## III. Standard of Review

This non-jury case is subject to our *de novo* review upon the record of the proceedings below. Tenn. R. App. P. 13(d) mandates that there is a presumption that the trial court's findings of fact are correct, and we must honor that presumption unless the evidence preponderates to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993). There is no presumption as to the correctness of the trial court's conclusions of law. *See Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996). As this is a case involving comparative fault, it is important to note that the assessment of the parties' relative fault is one of fact, carrying the aforementioned presumption of correctness. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn.1995); *Keaton v. Hancock Co. Bd. of Educ.*, 119 S.W.3d 218, 222-23 (Tenn. Ct. App. 2003). Our *de novo* review is subject to the well-established principle that the trial court, having seen and heard the witnesses testify, is in the best position to judge their credibility. *See Bowman v. Bowman*, 836 S.W.2d 563, 567 (Tenn.Ct.App.1991). Great deference must be shown to the trial court's credibility determinations. *Id; Keaton,* 119 S.W.3d at 223.

## IV. Analysis

Mr. Cannon argues on appeal that the Defendants should be allocated 100% of the fault attributable to his accident. The issue before us is solely one of comparative negligence. It is not

disputed that the Loudon County jail officials, while not insurers of their prisoners' safety, have a duty to exercise ordinary and reasonable care to protect the life and health of the persons in their custody. *Cockrum v. State,* 843 S.W.2d 433, 436 (Tenn. Ct. App. 1992).

The Supreme Court has provided the following guidance in assessing the percentage of fault attributable to each party:

> the percentage of fault assigned to each party should be dependent
>
> upon all the circumstances of the case, including such factors as: (1) the relative closeness of the causal relationship between the conduct of the defendant and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as an attempt to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth.

*Eaton v. McLain*, 891 S.W.2d 587, 592 (Tenn. 1994)(footnotes omitted).

Based on our review of the record, the evidence does not preponderate against the trial court's finding that the Loudon County jailers "were all aware that when it rained there would be leaks that could cause water to be on the jail floor[,] creating a dangerous condition." At least seven entries from the jail's daily log, kept by correctional officers at the jail, were introduced into evidence. These log entries documented instances in June, July, and August of 2002 of water leaks at the jail. The July 13, 2002 entry documents a "bad water leak" and states "we're running out of buckets and trash cans." The August 3, 2002 entry documents that the ceiling fell in next to the control room, an area directly across from the recreation room.

Additionally, it is undisputed that on August 1, 2002, Mr. Cannon slipped and fell on accumulated rainwater that had leaked onto the recreation room floor. This August 1 fall necessitated a trip to the emergency room and resulted in Mr. Cannon suffering a knee injury. Captain Tony Arden, the jail administrator, testified that because there was no log notation showing a water leak on the day of Mr. Cannon's first fall, it was a reasonable assumption that not all of the water leak instances showed up in the daily log, stating, "it's supposed to have, but I suppose it didn't." Capt. Arden further testified that there was no additional inspection routine put into place at the jail after Mr. Cannon's first fall.

We likewise find that the evidence does not preponderate against the trial court's conclusion that the correctional officers on the second shift had been told three times about the rainwater leaking into the recreation room and accumulating on the floor, and that they did nothing to remedy the situation despite being asked at least once by the inmates for a mop and bucket. We concur with the

trial court's finding that the Loudon County jailers "did have notice of the dangerous conditions, and they had sufficient time to have taken some action to remedy the condition." Capt. Arden testified that he knew that the jail's roof would periodically leak when it rained, that rainwater would accumulate in the cells, and the water posed a danger of causing someone to slip and fall. Capt. Arden opined that having water accumulate on the jail floor is not "a safe way to house adult inmates."

In summary, the evidence does not preponderate against the trial court's conclusion that the Defendants were at fault in Mr. Cannon's accident and injury.

We now turn to an examination of Mr. Cannon's conduct. Shortly before 1:00 AM on August 24, 2002, Mr. Cannon got up from his sleeping mat and slipped on the water in the recreation room where he was incarcerated. Exactly why Mr. Cannon arose from his mat is not perfectly clear. The daily log reporting the incident stated that he got up to go to the bathroom, and the trial court so found. Mr. Cannon testified that he got up to take a fan over to the door of the cell so that a correctional officer could try to fix it, pursuant to the officer's request. The parties agree that the precise reason Mr. Cannon got up, whether to go to the bathroom or in hopes of getting the fan fixed, does not have a particularly strong bearing on the issue of comparative negligence in this case.

We agree, because in either instance, we find that Mr. Cannon had good cause to take the action he did. If it was to go to the bathroom, he obviously had little choice in the matter. Mr. Cannon also had good cause to bring the fan to the cell door, because the air conditioning was not working in the recreation room, and there was no window opening to the outside. The jail log entry for August 24th, the day of his injury, written by a correctional officer, stated, "[i]t's hot as 40 hells in this jail. Everyone is going to be sick." Because the air conditioning was not working, the inmates in the recreation room were provided with an electric fan. It was undisputed that the fan was broken on August 23rd and 24th. Capt. Arden testified that inmates in an enclosed room with no exterior air would have great need of an electric fan.

Mr. Cannon testified that on the evening of August 23, 2002, "it came a downpour, and it was immediately leaking down, down the walls and dripping onto the bench and splattering into the floor." He stated that when it rained, there were leaks "pretty much all over the room, in every corner and around the windowsill." Mr. Cannon testified that on the evening of his fall, the floor of the bathroom was "completely covered" with rainwater – "it had ran down all the interior walls. It was coming through a vent that they had removed for the roof, an exhaust fan, they had taken it out, and there was just a vent grid on the inside, and it was just pouring through it."

Matthew Ryan, another inmate housed in the recreation room, testified that water had accumulated in the recreation room in the area around the entrance to the bathroom. Mr. Cannon further testified as follows regarding the location of the water:

A: There were footprints, tracks, where they had walked to the rest room when – it was tracked. It was different from people coming and going in and out of the rest room.

Q: How widespread were those footprints?

A: Over half of the area in and out from the rest room.

*       *       *

Q: Mr. Cannon, did you know there was water on the floor of the rec room on August 23, 2002?

A: Yes, sir.

Q: Did you know where this water was?

A: In the general areas of it, yes.

Q: Well, didn't you mark for your attorney there the areas that there was water on the floor?

A: Yes, sir, but I didn't know exactly where every single foot track. I knew where the general areas of the puddling was, but where people had tracked from the bathroom in and out, I didn't exactly know the specific location of each footstep.

Q: Mr. Cannon, did you know where the puddle was that you fell in before you fell in it?

A: I didn't fall in a puddle. I slipped on one of the tracks, where somebody had tracked the water out of the bathroom.

Q: But you knew there were footprints, tracking water out of the bathroom.

A: Not until I fell, I didn't.

In response to the question whether there "was any way to get to the rest room or to this electric fan without going through rainwater," Mr. Cannon replied, "No, sir."

Inmates at the Loudon County jail were issued sandals for footwear. Capt. Arden testified that they are commonly referred to as "flip-flops" and agreed that they "have a spongy, rubbery, plastic-like material on the sole." Mr. Ryan testified that the sandals are "slick" on a wet surface.

One of the factors courts must consider in assessing comparative negligence is "the reasonableness of the party's conduct in confronting a risk." *Eaton,* 891 S.W.2d at 592. In making this determination, our courts have properly taken into consideration whether, and to what extent, encountering a known risk is avoidable; or, stated another way, what reasonable alternatives to encountering a known risk are available to a party.

Thus, in *Keaton v. Hancock Co. Bd. of Educ.,* 119 S.W.3d 218 (Tenn. Ct. App. 2003), this court found that the plaintiff had little choice in encountering a known risk of electric shock from a dangerous workplace appliance. The *Keaton* plaintiff established that wearing think rubber gloves for protection was not a reasonable means of avoiding the risk, because she was unable to do her job as a cook wearing them. *Keaton,* 119 S.W.3d at 224. The court stated that "[w]e cannot blame the plaintiff for continuing to work in the school kitchen. People have to work for a living." *Id.* at 225. Therefore, among other reasons, because the plaintiff had no reasonable opportunity to avoid the risk, the *Keaton* court held the employer 100% at fault, modifying the trial court's ruling finding the plaintiff 33⅓% at fault. *Id.* at 226.

Similarly, in *Heggs v. Wilson Inn,* No. M2003-00919-COA-R3-CV, 2005 WL 2051287, 2005 Tenn. App. LEXIS 535 (Tenn. Ct. App. M.S., filed August 25, 2005) the court vacated the trial court's grant of summary judgment against a plaintiff who slipped on a wet tile floor as she was walking to an elevator. Even though the *Heggs* plaintiff saw the "wet floor" sign, she walked on the floor because she wanted to take the elevator. The court, noting that "a customer's full knowledge of a dangerous condition does not necessarily immunize a defendant from premises liability if the danger is either unavoidable or one that given the circumstances the customer is likely to encounter anyway," and inferring for summary judgment purposes that there was no way to board the elevator without walking on the wet floor, held summary judgment to be inappropriate. *Heggs,* 2005 Tenn. App. LEXIS 535 at *10, *14-15.

Conversely, in *Easley v. Baker*, No. M2003-02752-COA-R3-CV, 2005 WL 697525, 2005 Tenn. App. LEXIS 166 (Tenn. Ct. App. M.S., filed Mar. 24, 2005), the court affirmed summary judgment against a plaintiff who slipped on a wet bathroom floor where a "wet floor" sign was in plain view. Among other things, the court reasoned that the *Easley* plaintiff had a reasonable opportunity or choice to avoid the risk of a water puddle, noting that the plaintiff "was no 'captive' in the restroom as there is no evidence that the toilet stalls were not available for his purposes or that his immediate need for urination compelled his action." *Easley,* 2005 Tenn. App. LEXIS 166 at *20.

In the present case, as the evidence outlined above indicates, Mr. Cannon had little, if any, choice in encountering the risk of walking on a wet floor, a dangerous condition caused by the action of the Defendants. Obviously, Mr. Cannon had no choice but to remain in his cell and could not voluntarily leave the premises. For this reason and the other reasons stated above, and taking into

consideration "the total context of the injury-causing accident, including the relationship of the parties," *Keaton,* 119 S.W.3d at 225, as well as the *Eaton* factors, we hold that the evidence preponderates in favor of the conclusion that the plaintiff should not be held at fault in the accident.

While the trier of fact has considerable latitude in allocating percentages of fault, appellate courts have the power to reallocate fault when the evidence preponderates against the trial court's fault-finding. *Keaton,* 119 S.W.2d at 225 (citing *Wright v. City of Knoxville,* 898 S.W.2d 177 (Tenn. 1995) and *Cross v. City of Memphis,* 20 S.W.3d 642 (Tenn. 2000)).

### *V. Conclusion*

For the aforementioned reasons, the judgment of the trial court finding Mr. Cannon 50% at fault and dismissing his lawsuit is reversed. We allocate 100% of the fault in the accident to the Defendants. Because the Defendants are liable for Mr. Cannon's injury under traditional negligence principles, our holding renders moot the question of whether the County is liable for his medical expenses pursuant to T.C.A. § 41-4-115, and that issue is pretermitted. There is an order in the record from the Loudon County Criminal Court holding the State of Tennessee liable for Mr. Cannon's medical expenses, and it is not clear whether, and to what extent, the State has made payments for those expenses. This case is remanded to the trial court for such proceedings as may be required, consistent with this opinion, including a determination and award of damages to Mr. Cannon, and consideration of any subrogation issues that may have arisen as between the respective parties and the State. Costs on appeal are assessed to the Appellees, Loudon County, Tennessee and Tim Guider in his official capacity as Sheriff of Loudon County.

_____
SHARON G. LEE, JUDGE