IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 5, 2006 Session

## DAVID CANTER v. RICHARD EBERSOLE

**Direct Appeal from the Chancery Court for Hamilton County**
**No. 04-0585     Hon. W. Frank Brown, III., Chancellor**

### No. E2005-02388-COA-R3-CV - FILED MAY 13, 2006

Plaintiff brought an action in the Chancery Court to pierce the corporate veil to reach assets of a member to satisfy a judgment against the corporation. The Chancellor refused the request and dismissed the action. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

Michael A. Anderson, Chattanooga, Tennessee, for appellant.

John P. Konvalinka, Chattanooga, Tennessee, for appellee.

### OPINION

In this action the plaintiff asked the Chancellor to pierce the corporate veil of Windward Pointe Townhomes, LLC ("WPT").

Richard Ebersole and Dale Mabee organized WPT on July 17, 1998 for the purpose of constructing and selling eight town homes near Lake Chickamauga in the Chattanooga area.[1] Ebersole became the sole member after Mabee withdrew from WPT in April 2001. WPT had an initial capitalization of $1,000.00, and First Tennessee Bank provided over three million dollars in

---

[1]WPT was organized pursuant to Tenn. Code Ann. §§ 48-203-101, 48-205-101.

financing pursuant to a loan, which Ebersole personally guaranteed.[2]

On November 2, 1998, WPT entered into a sales contract with the plaintiff for the purchase of one of the town homes. According to Ebersole, the agreed purchase price was $525,000.00, and pursuant to the contact, Canter paid a $25,000.00 deposit for the town home and installed heat and air units in all eight town homes via his company, Retail Air Systems, LLC ("Retail Air"). In exchange for the installation of the heat and air units, Canter was to receive a credit of $42,515.79 against the purchase price at closing. At some point in 2002, plaintiff informed WPT that he did not intend to close the sale. In December 2002, WPT sold this town home to another buyer for less than the original contract price, and filed suit against Retail Air and plaintiff for the breach of the contract, and Retail Air and plaintiff filed a counter-claim for the same.[3] On September 25, 2003, the Chancery Court entered a judgment dismissing WPT's complaint and awarding Canter $67,515.79 against WPT.[4]

Plaintiff's Complaint averred that WPT failed and refused to pay the judgment and that Ebersole exercised his personal dominion and control over WPT to defraud plaintiff. The Complaint argued that Ebersole should be held personally liable to pay the judgment, post-judgment interest, and costs. After trial, the Chancellor ruled that the evidence did not support piercing the corporate veil, and dismissed the Complaint with prejudice.[5]

This case is subject to *de novo* review based upon the record of the proceedings below. *Keaton v. Hancock County Bd. of Educ.*, 119 S.W.3d 218, 222 (Tenn. Ct. App. 2003). We will presume that the trial court's findings of fact are correct, unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.

---

[2]WPT defaulted on this loan in the summer of 2002, and Ebersole used his personal funds to make payments directly to First Tennessee Bank pursuant to the guaranty.

[3]WPT did not have sufficient funds to pay for legal fees; thus, Mr Ebersole paid the legal fees personally. Prior to this litigation, the Secretary of State administratively dissolved WPT for failure to file its annual report for 2000. This administrative dissolution occurred on March 16, 2001. The Secretary of State reinstated WPT on February 25, 2004.

[4]The Chancery Court reasoned that WPT breached the contract first by delaying completion of Mr. Canter's town home until June 2001.

[5]Neither shareholders of a corporation nor members of a limited liability company are personally liable for the acts or debts of the entity. Tenn. Code Ann. §§ 48-16-203(b), 48-217-101(a)(1) (2005). In addition, both corporations and limited liability companies are empowered "as an individual to do all things necessary or convenient to carry out its business." Tenn. Code Ann. §§ 48-13-102, 48-212-101 (2005). In addition, this Court has affirmed application of veil piercing to disregard the existence of an LLC. *Chopra v. U.S. Prof'ls, LLC.*, No. CT-004949-00, 2005 WL 280346, at *4 (Tenn. Ct. App. Feb. 2, 2005).

1993). This presumption of correctness, however, does not apply to the trial court's conclusions of law. *Keaton*, 119 S.W.3d at 222.

The piercing of a corporate veil is applied in extreme circumstances, and no single factor may form a basis for piercing the corporate veil. Piercing the corporate veil is an equitable doctrine to prevent the use of a corporate entity to defraud or perform illegal acts. *See, Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991); *Oak Ridge Auto Repair Service v. City Finance Co.*, 425 S.W.2d 620, 622 (Tenn. Ct. App. 1967); *Muroll Gesellschaft M.B.H. v. Tenn. Tape, Inc.*, 908 S.W.2d 211, 213 (Tenn. Ct. App. 1995). The legal entity should not be disregarded precipitately, but with great caution. *Schlater*, 833 S.W.2d at 925.

"The determination of whether to disregard the corporate fiction depends on the special circumstances of each case, and 'the matter is particularly within the province of the trial court.'" *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003) (quoting *Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 256 (Tenn. 1985)).

"Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities."

*Id.* (quoting *Federal Deposit Ins. Corp. v. Allen*, 584 F.Supp. 386, 397 (E.D. Tenn.1984)). The party requesting that the corporate entity be disregarded has the burden of presenting facts demonstrating the need for such relief. *Id.* No one factor is conclusive. *Id.*

Plaintiff argues there are several factors to justify disregarding the separate existence of WPT. He cites the fact that the Secretary of State administratively dissolved WPT prior to the entity's suit against Canter, and reinstatement was not made until after plaintiff was awarded the judgment at issue in this case. At trial, Ebersole testified he intended to dissolve WPT after this litigation is concluded. These facts are irrelevant, however, because an LLC member's right to limited liability "continues in full force regardless of any dissolution, winding up, and termination of an LLC." Tenn. Code Ann. § 48-217-101(b) (2005).

Plaintiff also stresses that Ebersole failed to follow usual company formalities. For example, Ebersole contended that by informally discussing business with his former partner, Mabee, any requirements for formal meetings and resolutions were satisfied. On March 16, 2001, the Secretary of State administratively dissolved WPT for failure to file its annual report for 2000. In addition, WPT received numerous loans from Ebersole and other entities controlled by Ebersole. There were no formal promissory notes documenting these interest free loans, only notations in the entities' accounting records. These facts are also irrelevant because an LLC's failure to follow usual company formalities "is not a ground for imposing personal liability on the members . . . of the LLC." Tenn. Code Ann. § 48-217-101(e) (2005).

Plaintiff asserts that WPT was grossly undercapitalized, as the initial capitalization was only $1,000.00 for a multi-million dollar project. Soon after its formation, WPT received $3.2 million in financing from First Tennessee Bank, and Ebersole personally guaranteed this loan. WPT also received one million dollars in additional loans from Ebersole and entities owned by him. The Chancellor rejected this argument thusly:

> Mr. Ebersole testified that the initial capital of WPT was $1,000.00. However, he and Mr. Mabee and companies they controlled made loans to WPT as needed. Most important, the members had estimated the costs of the project and agreed to borrow sufficient funds from First Tennessee Bank to build the townhomes. Unfortunately for Mr. Ebersole, there was an increase in costs and expenses and two townhomes did not sell as expected. The anticipated profit did not occur.

> Mr. Canter points to Mr. Ebersole's personal payment of some of WPT's debts. Therefore, Mr. Canter argues that Mr. Ebersole should be liable for all debts of WPT. Mr. Ebersole testified, without contradiction, that he only paid those obligations of WPT for which he also was personally liable. For example, he executed a personal guarantee to First Tennessee Bank. He had paid some of his personal monies to First Tennessee Bank when WPT did not have the funds to make payment. His alternatives were to loan funds to WPT, so WPT could make the payment, or let the bank sue him. His direct payment to the bank was reasonable and permissible. This case is an example why creditors want a personal guarantee and/or adequate security for a loan.

Plaintiff also argued that Ebersole dominated WPT. After the withdrawal of Mabee, Ebersole had sole ownership and control of WPT, and had exclusive authority to write checks on WPT's account and to borrow funds on its behalf. He operated WPT from his home and used his personal cell phone for WPT business. While these facts indicate dominance, the evidence does not establish that Ebersole used his dominance to defraud or conduct an illegal operation.

Finally, Canter argues Ebersole's management of WPT's debts is another factor weighing in favor of veil piercing the corporate veil, and points to the repayment of debts to creditors other than Canter. The Chancellor concluded that Ebersole's payment of debts by the corporation,

-4-

where Ebersole was personally liable did not establish an ulterior motive to defraud creditors, especially as to debts that Ebersole personally guaranteed. Canter also points to the fact that WPT used its last $20,000.00 in assets to partially repay its debts to Ebersole. The record shows that Ebersole loaned WPT $369,556.99 and received total reimbursements of $146,697.07. The Chancellor, in refusing to pierce the corporate veil said:

> . . . Mr. Ebersole treated the entities as separate from himself. He documented loans to the LLCs and kept records of the transactions of the companies. Nothing in the record indicates that Mr. Ebersole used the LLCs to accomplish any unlawful acts. In addition, there is nothing in the record that indicates that Mr. Ebersole diverted any assets of WPT to prevent Mr. Canter from collecting the judgment. In sum, Mr. Canter has given the court no reason to find that the equitable relief of piercing the LLC veil is proper in this case. There was no injustice or wrongdoing shown which would require personal liability on Mr. Ebersole's behalf. Unfortunately, not every person gets paid for his goods and/or services.

The evidence does not preponderate against the Trial Court's findings of fact. Tenn. R. App. P. 13(d). We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to David Canter.

_____
HERSCHEL PICKENS FRANKS, P.J.

-5-