.IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs, December 30, 2009

# IN RE: JOHNNY  E. K.

**Appeal from the Chancery Court, Part I, for Hamilton County**
**No. 09-A-017      Hon. W. Frank Brown, III., Chancellor**

**No. E2009-01634-COA-R3-PT  - FILED FEBRUARY 16, 2010**

In this action to terminate the parental rights of both parents of J.E.K., the Trial Court, after hearing evidence, ruled that several statutory grounds for termination of both parents' parental rights had been established by clear and convincing evidence, as well as clear and convincing evidence that it was in the child's best interest for the parents' rights to be terminated.  On appeal, we affirm the Judgment of the Trial Court.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  CHARLES D. SUSANO, JR., J., and.  D. MICHAEL SWINEY, J., joined.

Cara C. Welsh, Chattanooga, Tennessee, for the appellant, Ashley Kyle.

John A. Shoaf, Chattanooga, Tennessee, for the appellant, Johnny Earl Dillard, Jr.

Robert D. Bradshaw, Chattanooga, Tennessee, for the Guardian Ad Litem, for J.E.K.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and Lindsey O. Appiah, Assistant Attorney General, Nashville, Tennessee, for Appellee, The Tennessee Department of Children's Services.

# OPINION

## Background

On June 25, 2007 the Tennessee Department of Children Services (DCS) was awarded the temporary care and custody of J.E.K., who was born on May 20, 2003. J.E.K. was adjudicated dependent and neglected on December 5, 2007 by the Juvenile Court of Hamilton County. The Order reflects that Ms. Kyle and Mr. Dillard, the parents who were represented by counsel, waived their rights to an adjudicatory hearing, and the order states that the reason for removal of the child was that the mother was incarcerated at the time of the removal and she had arranged for the children to reside with an elderly relative who became unable to care for the child. Dillard was also incarcerated at the time of the removal of the children, and subsequently, a Petition to terminate their parental rights was filed in Chancery Court.

The Trial Court terminated the parental rights of both parents, and this appeal ensued.

## Issued Presented for Review:

A. Whether the Trial Court was correct when it held that clear and convincing evidence supported the termination of Ms. Kyle's parental rights to J.E.K. under Tenn. Code Ann. §36-1-113(g)(2) for substantial noncompliance with the reasonable requirements of the permanency plan?

B. Whether the Trial Court was correct when it held that clear and convincing evidence supported the termination of Ms. Kyle's parental rights to J.E.K. under Tenn. Code Ann. §36-1-113(g)(3) with regard to the persistent conditions relating to the removal of her child or to those conditions preventing the return of the child to her care?

C. Whether the State of Tennessee failed to make reasonable efforts to place this child with suitable relatives in order to expedite safety and permanence for him?

D. Did Mr. Dillard receive actual notice of the termination hearing as required by the due process clause of the 14th Amendment of the United States Constitution and Tenn. Code Ann. § 36 -1-113(f)?

E. Was Mr. Dillard denied his rights to due process because the teleconference device used during part of the termination hearing was ineffective or inadequate which resulted in only partial participation by Mr. Dillard in violation of Tenn. Code Ann. § 36-1-113(f)(3)?

F. Whether the Trial Court was correct when it held that clear and convincing evidence supported the termination of Mr. Dillard's parental rights to J.E.K. under Tenn. Code Ann. §36-1-102(a)(iv) for abandonment ?

G. Whether the Trial Court was correct when it held that clear and convincing evidence supported the termination of the parental rights of Ms. Kyle and Mr. Dillard as termination was in the best interest of the child pursuant to Tenn. Code Ann. §§36-1-113(c) and 36-1-113 (i)?

The Supreme Court in *In re F. R.R., III,* 193 S.W.3d 528, 530 (Tenn.2006) reiterated the standard of review for cases involving termination of parental rights stating:

This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine,* 79 S.W.3d 539, 546 (Tenn.2002) (citing Tenn.Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F. R.R.* at 530.

The Court reviews credibility determinations made by the trial court with great deference, *State, Dept. of Children's Services v. Harville,* No. E2008-00475-COA-R3-PT, 2009 WL 961782 at * 6 (Tenn. Ct. App. Apr. 9, 2009)(citing *Keaton v. Hancock County Bd. of Educ.,* 119 S.W.3d 218, 223 (Tenn. Ct. App. 2003)).

As to the first issue on appeal, Tenn. Code Ann. §36-1-113(g)(2) provides:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g) . . . .

(2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4.

The Trial Court found by clear and convincing evidence that Ms. Kyle was not in substantial compliance with the permanency plan she entered into with DCS and that this was a ground for termination of her parental rights. Ms. Kyle argues that the evidence shows that she substantially complied with the permanency plans' statement of responsibilities. DCS contends that while Ms. Kyle did comply with some of the tasks enumerated in the permanency plan, there is much evidence that supports the Trial Court's finding that she was in substantial noncompliance with the plans' central obligations designed to achieve reunification. Ms. Kyle does not appeal the Trial Court's findings that the permanency plans' requirements were reasonable.

There are three permanency plans at issue which are essentially the same. This Court has held that Tenn. Code Ann. § 36-1-113(g)(2) does not require substantial compliance with a permanency plan's desired outcomes, but rather, it requires substantial compliance with a plan's statement of responsibilities *i.e.* the actions required to be taken by the parent. *State Dept. of Children's Services v. P.M.T.* No. E2006-00057-COA-R3-PT, 2006 WL 2644373 at * 8 (Tenn. Ct. App. Sep. 15, 2006). To assess a parent's substantial noncompliance with a permanency plan, the court must weigh "both the degree of noncompliance and the weight assigned to that particular requirement. *In* re *Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 WL 21266854 at * 12 (Tenn. Ct. App. June 3, 2003).

Under the goal of parental reunification the desired outcome was that Ms. Kyle was to have a safe, stable and permanent home and the actions assigned to Ms. Kyle to achieve the desired outcome was that she would obtain and maintain an adequate house, that she would have a legitimate, verifiable means of income to provide for her child and that she would pay child support. The evidence showed that Ms. Kyle had maintained a house for a least a year and a half before the termination hearing. However, she did not produce any validation to DCS that she had maintained a legitimate income and paid child support except for pay stubs that showed that she had worked and paid child support out of her wages from May 2, 2009 to June 26, 2009. She admitted that she had little or no memory of where she had worked since the children were taken into custody up until she had acquired her job as a hotel housekeeper in May 2009. She claimed that she had worked at Daddy's Daycare as a cleaner for almost a year but she could not verify the employment to DCS because she had been paid in cash and she had not filed any tax returns that would reflect income. Based on the evidence presented, Ms. Kyle did not substantially comply with the requirement in the permanency plans that she maintain legitimate and verifiable income during the pendency of the permanency plans. Further, although evidence did show that Ms. Kyle did pay child support for approximately six weeks just before the termination hearing, there was no evidence of her meeting this requirement during nineteen to twenty months that passed between the entry of the first permanency plan and her first payment on June 6, 2009. Accordingly, she did not substantially comply with the requirements that she have legal and verifiable employment and pay child support.

The evidence further established that she failed to complete the recommended counseling sessions, and she later tested positive for cocaine. She did not comply with the plans' requirements as to desired outcome. Without further detailing the evidence, the evidence supports the Trial Court's conclusion that Ms. Kyle's illegal drug use was the single most detrimental issue to the child.

Based on our review of Ms. Kyle's compliance with the requirements set forth in the parenting plan, we cannot conclude that she was in substantial compliance with the plan. The Trial Court did not err when it found Ms. Kyle's parental rights should be terminated based on substantial noncompliance with the statement of responsibilities in the parenting plan pursuant to Tenn. Code Ann. §36-1-113(g)(2).

Next, Ms. Kyle also appeals the Trial Court's finding that termination of Ms. Kyle's parental rights was appropriate under Tenn. Code. Ann. § 36-1-113 for persistent conditions which led to the

child's removal or other conditions which, in all reasonable probability, would cause the child to be subjected to further abuse and neglect and, therefore, prevent the child's safe return to the mother's care. As we have affirmed the Trial Court's termination of Ms. Kyle's parental rights to J.E.K. based on substantial non-compliance with the permanency plan, it is unnecessary to reach the issue of whether the Trial Court erred on the persistent conditions issue as only one ground for termination needs to be proved. *In re D.L.B.,* 118 S.W.3d 360, 367 (Tenn. 2003).

Next, Ms. Kyle raises the issue on appeal of "[w]hether the State of Tennessee failed to make reasonable efforts to place J.E.K with suitable relatives?" This issue was not raised at trial, and will not be considered on appeal. *Correll v. E.I. DuPont de Nemours & Co.,* 207 S.W.3d 751, 757 (Tenn. 2006)(citing *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991).

As to Mr. Dillard's appeal, he requests that the judgement against him be dismissed as he did not receive notice of the hearing on the petition to terminate his parental rights to J.E.K. He does not contend on appeal that he was not served with the termination petition itself. Tenn. Code Ann. § 36-1-113(f) provides for notice requirements in a termination of parental rights proceeding if a parent is incarcerated as follows:

> Before terminating the rights of any parent or guardian who is incarcerated or who was incarcerated at the time of an action or proceeding is initiated, it must be affirmatively shown to the court that such incarcerated parent or guardian received actual notice of the following:
>
> (1) The time and place of the hearing to terminate parental rights;
>
> (2) That the hearing will determine whether the rights of the incarcerated parent or guardian should be terminated;
>
> (3) That the incarcerated parent or guardian has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent or guardian should be terminated, and, at the discretion of the court, such participation may be achieved through personal appearance, teleconference, telecommunication or other means deemed by the court to be appropriate under the circumstances;
>
> (4) That if the incarcerated parent or guardian wishes to participate in the hearing and contest the allegation, such parent or guardian:
>
> (A) If indigent, will be provided with a court-appointed attorney to assist the parent or guardian in contesting the allegation; and
>
> (B) Shall have the right to perpetuate such person's testimony or that of any witness by means of depositions or interrogatories as provided by the Tennessee Rules of Civil Procedure; and
>
> (5) If, by means of a signed waiver, the court determines that the incarcerated parent or guardian has voluntarily waived the right to participate in the hearing and contest the allegation, or if such parent or guardian takes no action after receiving notice of such rights, the court may proceed with such action without the parent's or guardian's participation.

Tenn. Code Ann. § 36-1-113(f).

It is not clear if this issue was properly raised at the trial level. Dillard was represented by counsel at the termination hearing and his counsel was present when the hearing took place. Dillard attended the hearing via a teleconference phone. At the outset of the hearing the Trial Court announced that the record showed that Dillard was served on April 16, 2009 by delivery of a copy of the Summons and the Complaint to the warden of the correctional institution where he was incarcerated. Following this statement by the Court, Mr. Dillard's counsel stated that Mr. Dillard had indicated that he had not received any documentation after that date. Mr. Dillard, who was waiting in the warden's office so that he could participate in the hearing via telephone, was questioned regarding whether he had received any court papers. His testimony was contradictory and confusing. At first he stated that he had not received any documents at all, then he said that he had not received any court documents since the case was in juvenile court the year before and that he had not received a petition for termination of parental rights. Then he said he had received a petition from the Chancery Court of Hamilton County in March 2009.[1] Mr. Dillard recognized that he was represented by counsel and that there was a hearing that day to terminate his parental rights. The Trial Court then specifically asked Mr. Dillard if he was ready to go forward with the case that day and he answered "yes sir". Following this exchange between the Court and Mr. Dillard, the hearing commenced without any objection from Mr. Dillard's counsel. Mr. Dillard's counsel never raised the issue of whether the notice of the hearing had been provided to him or Mr. Dillard, however, both Mr. Dillard and his counsel were present at the time the hearing commenced.

The Trial Court affirmatively stated that service of process of the petition had been on April 16, 2009 and the issue of service of process of the petition has not been raised on appeal. The issue of service of the notice of the hearing was never raised at trial, but we are of the opinion that any issue of service of process was waived when Mr. Dillard informed the Court that he was ready to proceed and his counsel remained silent.

Next, Mr. Dillard contends that his right to due process and his statutory right to attend the termination hearing by teleconference under Tenn. Code Ann. § 36-1-113(f)(3) were violated because the speaker phone used at the beginning of the hearing was ineffective and inadequate, which resulted in his only being able to partially participate in the hearing, and he asked, based on this assignment of error, that the case be remanded to the Trial Court for another hearing.

The transcript of the termination hearing demonstrates that the telecommunication device initially used was not functioning properly and that Dillard complained that he could not hear the testimony of Ms. Kyle. Shortly after Ms. Kyle began to testify, the Court moved the trial to another court room and the problem was solved. At no time during the trial did counsel for Mr. Dillard raise the issue that Mr. Dillard's rights were violated based on the poor functioning of the teleconference system. As this issue was not raised before the Trial Court, it will not be considered on appeal. Also, in view of the fact that Dillard was represented by counsel, he had the opportunity to cross-examine the witness.

_____

[1]The original petition was filed March 10, 2009 and the amended petition was filed April 1, 2009. Counsel was appointed for both parents on March 25, 2009.

Mr. Dillard also appealed the Trial Court's termination of his parental rights to J.E.K., upon a finding of abandonment under Tenn. Code Ann. §36-1-102(A)(iv). The Trial Court did not err on this issue. Tenn. Code Ann. § 36-1-102 (1)(A) provides that "[f]or purposes of terminating the parental . . . rights of parent(s) . . . of a child to that child in order to make that child available for adoption, "abandonment" means that:

> (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

DCS argued to the Trial Court that Mr. Dillard had abandoned J.E.K. pursuant to subsection (iv) because his illegal acts that led to his incarceration exhibited wanton disregard for the welfare of J.E.K. The Trial Court found that there was no doubt that Mr. Dillard had been incarcerated since Ms. Kyle was three months pregnant with J.E.K. and that he knew he was the father. The Court stated that Mr. Dillard was convicted of several different offences, including offences involving illegal drugs, after he became aware of his pending fatherhood. The Trial Court found that the fact that Mr. Dillard had committed criminal offences during Ms. Kyle's pregnancy which led to incarceration, qualified as "wanton disregard for the welfare of the child" constituting abandonment under the statute. The evidence supports the Trial Court's findings. In *In re Audrey S.*, 182 S.W. 3d 838 (Tenn. Ct. App. 2005), this Court held that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child. *Id.* at 867 - 868 (citing *State Dep't of Children's Servs. v. J.M.F.,* No. E2003-03081-COA-R3-PT, 2005 WL 94465 at *7-8 (Tenn. Ct. App. Jan.11, 2005). Mr. Dillard admitted that he committed criminal acts during the pregnancy for which he was incarcerated. His actions clearly exhibited "wanton disregard" for the welfare of J.E.K. and termination of his parental rights based upon abandonment was not error.[2]

Both parents raise the issue of whether the Trial Court's order of termination of parental rights was in the best interest of the child as required by Tenn. Code Ann. §§36-1-113(c) and 36-1-

---

[2]The Trial Court found that the criminal acts that Mr. Dillard carried out while incarcerated also qualified as "wanton disregard" for the child's welfare and provided another basis for termination based on abandonment. The Trial Court erred as the statute clearly states that the actions of the parent must have occurred **prior** to incarceration for them to provide grounds for termination based on abandonment.

113(i).

In this case the Trial Court found that the best interests of the child factors weighed in favor of terminating the parental rights of both parents for the following reasons: (1) Ms. Kyle and Mr. Dillard failed to make adjustment of circumstances such that it would be safe and in the best interests of the child to return home under Tenn. Code Ann. § 36-1-113(i)(1). The evidence supports this finding. As noted previously, Ms. Kyle's continued use of the illegal drug cocaine prevented her from providing a safe home environment for J.E.K As far as Mr. Dillard, he has no home, safe or unsafe, for the child to return to, as he has been incarcerated during the child's entire life. Further, Mr. Dillard's illegal actions while in prison have been the cause of his term of incarceration to be lengthened. The Trial Court's findings are correct that the parents' failure to make such adjustments is such that it does not appear reasonably possible that a lasting adjustment is possible. This finding is supported by the evidence as Ms. Kyle continued to use cocaine and Mr. Dillard remained in prison.

The Trial Judge's finding that termination was in the best interest of the child is affirmed.

Accordingly, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Ashley Trenee Kyle and Johnny Earl Dillard, Jr.

_____
HERSCHEL PICKENS FRANKS, P.J.