IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2001 Session

## CHRISTELL STAGGS v. WILLIAM E. SELLS, ET AL.

**Appeal from the Chancery Court for Putnam County**
**No. 98-329      John Turnbull, Chancellor**

---

**No. M2000-03095-COA-R3-CV - Filed December 18, 2001**

---

This case involves a claim of negligent misrepresentation in the sale of a home. The trial court found that Defendants' statements and actions constituted negligent misrepresentation of the condition of the property resulting in $25,000.00 in damages to Plaintiff. However, the trial court also found, applying principles of comparative fault, that Defendants were 60% at fault and Plaintiff was 40% at fault. A judgment of $15,000 was, thus, assessed against Defendants. Defendants appeal the court's finding of negligent misrepresentations, as well as the amount of damages determined by the court to be suffered by Plaintiff. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., and FRANK G. CLEMENT, JR., SP. J., joined.

Onnie L. Winebarger, Byrdstown, Tennessee, for the appellants, William Sells and wife, Betty Jean Sells.

 Daryl A. Colson, Livingston, Tennessee, for the appellee, Christell Staggs.

### OPINION

In 1987, Defendants/Appellants, William E. and Betty Jean Sells, purchased a home in which their daughter lived until 1995, when they placed this house up for sale. Defendants never actually lived in the home, but lived close by and visited their daughter regularly. Plaintiff/Appellee, Christell Staggs, viewed the home on three occasions and negotiated a purchase price for the house of $71,000.00. A contract was signed with Defendants to purchase the house for that amount. This contract also provided "[t]hat [the] Property has not been damaged or affected by flood or storm run-off and that [the] Property does / does not require flood insurance." The box next to the phrase "does not" in this sentence was checked. No other explanation was provided by Defendants.

Although Defendants accepted the offer, they never saw the contract and authorized their agent to sign it for them. Their agent never read the terms of the contract to them and did not inquire regarding any flooding which might have occurred on the property.

Plaintiff inspected the property herself. She also had the property appraised and inspected by professionals. The appraisal came in at $71,000.00; however, the appraiser noted that the property was in a low lying area and could be subject to minor flooding. He recommended having a surveyor check for flooding, but issued the appraisal, which was accepted by the bank, without obtaining a survey on the assumption that the property did not flood. A flood certification was obtained that established that the property, like the majority of property in Putnam County, was in flood zone C. Flood insurance could be purchased but was not required.

At the closing, Plaintiff inquired of her agent what 'flood zone C' was. She was told by her agent that "it was a flood zone, but it is a low flood zone, it wasn't supposed to flood." She never ask Defendants about any flooding, and Defendants, who were present at the closing, never mentioned any flooding to her.

Over the next few years, water came up flooding the yard around 15 times. In some cases the flooding was so severe that the house was completely surrounded by water rendering it a virtual island. However, water has never come into the house and has not yet caused any structural damage to the dwelling. Testimony showed that no residents have had to spend significant time away from the house since the water usually recedes quickly, allowing access to the house within a few hours and completely clearing the property within a day or two.

In his findings of fact, the judge determined that the paragraph regarding storm run-off and flood insurance was marked at the time the contract was signed and held that, when Defendant's agent signed this contract, a guarantee was made by Defendants in that agreement. Said the court:

> I don't think there's an intentional misrepresentation here. I don't think that the proof rises to that level. But I think it does rise to the level of recklessness when that provision was in the contract when he and Mrs. Sells had authorized the agent to sign the contract for them, . . . you're guaranteeing that there's no water problem on this property. Putting that kind of authority in the hands of the agent without carefully looking at the contract itself, does amount to recklessness[,] and I'm satisfied that there was a misrepresentation.
>
> . . . .
>
> . . . The Court finds that Mr. and Mrs. Sells, not intentionally, but recklessly through their agent, misrepresented that this property did not – was not affected by flood or storm runoff.

I find that that representation was not true. I find that the defendants made that representation in this contract without exercising reasonable care. . . . And that this did in fact have the affect (sic) of causing Mrs. Staggs to rely on it.

. . . .

. . . [F]or the purpose of this lawsuit the comparison of fault is appropriate.

I find that the defendants were 60 percent at fault, I find that the plaintiff was 40 percent at fault. I find that the damages were suffered in this matter when you consider all the proof, including the photographs, the appraisals and the testimony of the plaintiff was in the amount of $25,000.

I find that because of the fault of Mrs. Staggs and her 40 percent of the fault that that judgment must be reduced to $15,000.

Upon the request of Plaintiff's counsel, the court also made the following findings regarding witness credibility:

I find that the witnesses who testified with reference to the nature of the flooding prior to 1995, who were most persuasive to the Court were those independent witnesses. Ms. Mable and Mr. Blue who have [no] dog in this hunt, who lived close in proximity and who saw how high the water got.

Defendants essentially presented three issues for review: (1) how should the principles of comparative fault be applied to negligent misrepresentation; (2) whether the evidence preponderates against the judge's finding of negligent misrepresentation; and (3) whether the evidence pre-ponderates against the amount of damages found to be suffered by Plaintiff.

Here, we are reviewing both the court's findings of fact and application of law, thus two different standards of review are applicable. Under Tennessee Rule of Appellate Procedure 13(d), "review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." *Foster v. Bue*, 749 S.W.2d 736, 741 (Tenn. 1998). However, "this presumption does not exist with regard to the trial court's legal determination or when the trial court's conclusions are based on uncontroverted facts." *NCNB Nat'l Bank of NC v. Thrailkill*, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993).

I.

The trial judge found that Defendants negligently represented in the contract that the property was not affected by flood or storm runoff and that this representation was false. Tennessee recognizes the tort of negligent misrepresentation, *Tartera*, 453 S.W.2d at 784, the law of which was

set out in the American law Institute, Restatement of Torts (Second), section 552, Tentative Draft Number 11, as quoted by the supreme court:

> (1) One who, in the course of his business, profession or employment, or a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information, if he fails to exercise reasonable care or competence in obtaining or communication the information.
> (2) The liability stated in subsection (1) is limited to loss suffered
> (a) By the person or one of the persons for whose benefit and guidance he knows the information to be intended; and
> (b) Through reliance upon it in a transaction in which it is intended to influence his conduct.

*Id.*; *See also, Hunt v. Walker*, 483 S.W.2d 732, 735 (Tenn. Ct. App. 1971). Thus, to prevail, the plaintiff must establish that "(1) the defendant supplied information to the plaintiff; (2) the information was false; (3) the defendant did not exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relied on the information." *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991). Further, Defendants, as principal, are liable for the negligent misrepresentations of their agent. *Haynes v. Cumberland Builder, Inc.*, 546 S.W.2d 228, 232 (Tenn. Ct. App. 1976).

Even though Defendants did not actually read or sign the contract themselves, they are responsible for the actions and representation of their agent, who was authorized to review and sign the contract on their behalf. The court made a finding that, at the time the contract was signed by Defendants' agent, it represented that the property was not affected by flood or storm runoff. The court also weighed the credibility of the witnesses and, based on testimony at trial, determined that Defendants were well aware of the flooding problems and the extent thereof at the time the contract was signed by their agent. We find the testimony in the record more than sufficient to support these findings.

"[B]efore a seller makes a representation, he is required to exercise reasonable care to make sure that it is correct." *Akbari v. Horn*, 641 S.W.2d 506, 508 (Tenn. Ct. App. 1982). The statement regarding flooding and storm runoff was patently false. Defendants' agent had an obligation to use reasonable care in determining that all representations made in the contract were true and correct. Such care was not used, and Defendants, as the principal, are now responsible for the negligence of their agent.

Defendants also argue that there was no reasonable reliance on the information supplied in the contract since Plaintiff was free to, and did, perform her own inspection of the building and property. However, as the flooding problem only occurred during periods of very heavy or prolonged rain, it was not readily discoverable by visual inspection. The flood zone was no different

-4-

than that of the surrounding houses, and the inspection revealed no telltale water damage to the house. Although the appraiser recommended a survey due to the low lying nature of the property, the statement in the contract that there was no flooding or storm runoff diminished the necessity for such survey, and the appraisal was accepted by the bank without question. Plaintiff also testified that she relied on the representation made in the contract that the property was not affected by flooding or storm runoff, and the court accepted her testimony as credible. The facts, as found by the court, support the court's determination that Plaintiff reasonably relied on the representations made by Defendants, and this evidence certainly does not preponderate against the finding of negligent misrepresentation.

II.

Defendants/Appellants argued that Tennessee law does not provide for applying comparative fault to negligent misrepresentation cases since, in these cases, Plaintiff must show that she justifiably relied on the misrepresentation, and if Plaintiff was negligent in performing reasonable inspections and inquiries, it cannot be said that she justifiably relied on the representations of Defendant. We find this argument unsound.

The doctrine of comparative fault in Tennessee is applied to negligence cases, and negligent misrepresentation is an action "in tort determined by the general principles of the law of negligence." *Tartera v. Palumbo*, 453 S.W.2d 780, 784 (Tenn. 1970). "If the plaintiff meets the burden of establishing the defendant's duty in a particular case, as well as the other elements of the negligence claim, the trier or fact must apply the principles of *McIntyre v. Balentine*." *Bond v. Belle Meade Fund*, No 96C-4542, 1998 WL 775662, at *4 (Tenn Ct. App. Nov. 9, 1998). However, it is only after a plaintiff proves all the elements of a negligence claim that the principles set out in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), and *Bond v. Belle Meade Fund* are applicable. "[S]o long as a plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover; in such a case, plaintiff's damages are to be reduced in proportion to the percentage of the total negligence attributable to the plaintiff." *McIntyre,* 833 S.W.2d at 57. "A plaintiff whose negligence is less than that of a tortfeasor may now recover damages reduced by a percentage of the plaintiff's own negligence" *Bond*, 1998 WL 775662 at *4.

It is axiomatic that a plaintiff could commit negligence which might have contributed to the amount of damage suffered, but still have justifiably relied on the defendants' representations. Justifiable reliance is one of the elements that must be established to the satisfaction of the trial judge by a preponderance of the evidence before the tort of negligent misrepresentation can be established by a plaintiff. Such a finding is not inconsistent with comparative fault on the part of the plaintiff. The trial judge found just such a situation here, and the evidence does not preponderate against that finding. We further find that the judge correctly applied Tennessee's comparative fault law to these facts and properly reduced the award of damages by the amount of fault attributable to Plaintiff.

III.

With regard to damages, there was very little evidence introduced other than Plaintiff's own testimony. She testified, pursuant to Rule 701 of the Tennessee Rules of Evidence, that the value of the property as a result of the flooding was between $32,000.00 and $35,000.00 and asked the court for a judgment of $38,500.00 representing the difference between what she believed she could sell the property for and the $71,000.00 she paid. The judge also viewed the very telling pictures, which showed the house completely surrounded by water only inches away from actually entering the house, and heard the testimony of several real estate agents who articulated their belief that the property would be extremely difficult sell.

The plaintiffs have a right to recover for all losses proximately caused by [defendant's] tortious conduct. . . .

. . . [T]he proper measure of the plaintiffs' general damages is the benefit of the bargain rule. This measure of damages allows the plaintiff to recover the difference between the actual value of the property be received At (sic) the time of the making of the contract and the value that the property would have possessed if [defendant's] representations had been true. The application of this measure of damages compels the defendant to make good on the false representations. The measure of damages and the fixing of the value of the property are to be determined as of the time of the transaction.

*Haynes,* 546 S.W.2d at 233 (citations omitted). The evidence does not preponderate against the finding of damages in the amount of the $25,000.00.

Based on the foregoing findings, we affirm the trial court's Ruling in its entirety.

_____
WILLIAM B. CAIN, JUDGE

-6-