IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 13, 2005 Session

# JAMES K. CANNON v. LOUDON COUNTY, TENNESSEE, ET AL.

**Appeal from the Circuit Court for Loudon County**
**No. 7112     Russell Simmons, Jr., Judge**

---

**No. E2004-02995-COA-R3-CV - FILED DECEMBER 20, 2005**

---

### DISSENTING OPINION

The majority finds defendant 100% at fault in the face of the Trial Court's ruling that each party was 50% at fault. In my opinion, the evidence does not preponderate against the Trial Court's finding that plaintiff was 50% at fault for his fall and injuries. Tenn. R. App. P. 13(d).

That defendant's negligence contributed to this injury cannot be seriously disputed, and I agree with the majority to that extent.

Plaintiff's conduct, however, also contributed to the injury, and I begin my analysis by noting that the Trial Judge was the judge of the credibility of the witnesses, and plaintiff's version of what he was doing at the time of his fall is conflicted.

Plaintiff chose to walk through the wet portion of the recreation room floor. Plaintiff's act of walking through the wet portion of the floor was the conduct which immediately preceded his injury. When comparing the defendant's conduct with plaintiff's conduct, plaintiff is more direct and the immediate cause of his injury.

*Eaton v. McLean*, 891 S.W.2d 587, 592-93 (Tenn. 1994), sets forth a road map for analyzing fault and is instructive in that the second factor provided by the *Eaton* Court is "the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it." "This factor is derived from the doctrine of "secondary implied assumption of risk' that was abolished in *Perez v. McConkey*, 872 S.W.2d 897 (Tenn. 1994)." *Id.* At 592 n.10. In *Perez*, the Tennessee Supreme Court stated:

> [W]e do not consider it necessary or desirable to retain the doctrine of secondary implied assumption of risk as a separate defense. Rather, the reasonableness of a

party's conduct in confronting a risk should be determined under the principles of comparative fault. Attention should be focused on whether a reasonably prudent person in the exercise of due care knew of the risk, or should have known of it, and thereafter confronted the risk; and whether such a person would have behaved in the manner in which the plaintiff acted in light of all the surrounding circumstances, including the confronted risk.

*Perez v. McConkey*, 872 S.W.2d 897, 905 (Tenn. 1994).

Plaintiff knew there was a risk of slipping on the recreation room floor. He knew there was a history of rainwater accumulating on the floor. On the night of the fall at issue, plaintiff knew rainwater was leaking into the recreation room and puddling on the floor. In addition to knowing that parts of the floor were wet, he also knew the dangers inherent in walking on the wet floor. On the night of the fall, he saw one of his fellow inmates slip and fall on the floor. Additionally, he himself had fallen on the same floor on August 1 when it was wet with rainwater.

Despite this knowledge, plaintiff confronted the risk inherent in walking on a wet floor. Whether a reasonably prudent person in plaintiff's situation would have done the same thing depends on whether plaintiff had the option of avoiding the wet condition. Plaintiff's own testimony is conflicted as to how much of the floor was wet. In the middle of his testimony, he was asked by his attorney whether "there was any way to get to the ret room or to this electric fan without going through rainwater." While he answered "no", his prior testimony and later testimony contradicted this statement.

Plaintiff's prior testimony was that "[o]ver half of the area in and out from the rest room" was covered by water in the form of "footprints" or "tracks." Rather than saying the entire area of the floor near the restroom was covered by standing water, such as a puddle, plaintiff limited the wet portion of the floor to "footprints" and "tracks" covering "[o]ver half the area." Individual footprints and tracks cannot be perceived unless they are surrounded by dry floor. Also if "[o]ver half the area" was wet, this compels the conclusion that the remaining portion of the floor was dry. If the entire floor was covered in standing water, plaintiff would have likely said so. Accordingly, his initial testimony indicates that a portion of the floor was dry and that the wet portion of the floor was not completely covered in water.

Later in his testimony, plaintiff was asked if he knew the location of the puddle in which he fell, and he answered "I didn't fall in a puddle. I slipped on one of the tracks, where somebody had tracked the water out of the bathroom." Thus, over the course of his testimony, plaintiff described the floor near the restroom three times, and two out of three times he described a floor that was not completely covered with water. In addition, when he was asked if he knew where the water was at the time he fell, plaintiff stated, "I didn't know exactly where every single foot track [was located]. I knew where the general areas of the puddling was, but where people had tracked from the bathroom in and out, I didn't exactly know the specific location of each footstep." A reasonably prudent person in plaintiff's position and knowledge of the dangerous condition, would have been careful to know the specific location of water and footprints so that those areas could be avoided while walking.

While plaintiff testified the lights were turned off around 10:00 p.m., the recreation room was not totally dark. Plaintiff testified that after the lights were turned off, one light remained on at all times near the recreation room's exit door. Officer Queener testified that two lights remained on. The light was sufficient to allow plaintiff to read a book while lying on his mat. According to plaintiff's testimony, the exit door in the rest room was located along the same wall and the broken fan was against the wall in between the two doors. Thus, the broken fan and the two doors were relatively close to the light. Plaintiff testified he fell after moving toward the fan. The jail's log states that plaintiff fell after moving toward the rest room. Officer Queener testified that plaintiff fell 15 feet from the recreation room exit door. In any event, plaintiff was moving away from his mat and closer to the light before he fell. If there was enough light for plaintiff to read while lying on his mat, there was enough light to see the we portions of the floor as he moved closer to the light.

The evidence does not preponderate against these conclusions. First, some portion of the floor near the rest room was dry. Second, there was enough light to tell the difference between the wet and dry portions of the floor. Third, a reasonably prudent person in plaintiff's situation could have seen the dry portions of the floor and stepped on those portions, rather than risking injury by stepping on the wet portions. This *Eaton* factor weighs against plaintiff.

In sum, in applying the *Eaton* factors to this case, the second and third factors focus on the fault of the parties, while the first factor compares causation instead of fault. The two factors focusing on the fault of the parties are evenly split. One factor weighs against plaintiff and the other weighs against the defendant. These factors seem to establish a roughly equal allocation of fault. Thus, the preponderance of the evidence does not lead to a conclusion different than that arrived at by the Trial Court, and the Trial Court's allocation of fault should be affirmed.

I would also hold the defendant Loudon County liable for plaintiff's medical expenses under Tenn. Code Ann. § 41-4-115, and would affirm the Trial Court on his finding of equal fault of the parties.

_____
HERSCHEL PICKENS FRANKS, P.J.