IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 13, 2012 Session

## DONNA M. WILLIAMS v. METROPOLITAN GOVERNMENT OF NASHVILLE/DAVIDSON COUNTY

**Appeal from the Circuit Court for Davidson County**
**No. 10C2647      Amanda Jane McClendon, Judge**

---

**No. M2012-01066-COA-R3-CV - Filed February 27, 2013**

---

Plaintiff appeals the dismissal of her complaint to recover for personal injuries sustained in a fall at the Davidson County Correctional Development Center. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and FRANK G. CLEMENT, JR., J., joined.

Michael K. Smith, Nashville, Tennessee, for the appellant, Donna M. Williams.

Jeff Campbell, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

## OPINION

### I. Background

This appeal arises out of a personal injury suit brought by Donna M. Williams ("Plaintiff") against the Metropolitan Government of Nashville and Davidson County ("Metro") and Davidson Transit Organization ("DTO") on July 14, 2010. With respect to DTO, Plaintiff alleged that she sustained injuries on one of its buses on June 20, 2009. With respect to Metro, Plaintiff alleged that she was incarcerated at the Davidson County Correctional Development Center ("DCCDC") on August 7, 2009, and suffered severe injuries to her neck and shoulder when she fell over a mattress on the floor of her cell; Plaintiff further alleged that Metro violated her civil rights by refusing to provide medical attention in the DCCDC. Plaintiff sought $1,850,000 in compensatory damages, $500,000 in punitive damages, and discretionary and court costs.

Metro answered, denying liability for Plaintiff's injuries and asserting that the cause of action must be brought under the Tennessee Governmental Tort Liability Act; asserting comparative negligence as an affirmative defense and identifying Correct Care Solutions as the entity which provided medical care at the DCCDC; and stating that it did not have "actual or constructive knowledge" of the dangerous condition alleged. Plaintiff subsequently amended her complaint to add Correct Care Solutions as a defendant.

The court entered an agreed order on August 18, 2011, striking the allegations of the amended complaint and dismissing the Correct Care Solutions as a defendant. The agreed order also struck the provisions of the amended complaint which alleged that Metro failed to provide appropriate medical care and violated Plaintiff's civil rights. On January 15, 2012, the court entered an agreed order dismissing Plaintiff's claim against DTO.

On April 2, 2012 Plaintiff filed a motion in limine which sought to prohibit Metro from "arguing or attempting to apportion comparative fault for the accident on the Plaintiff." Metro responded to the motion asserting that it sufficiently pled Plaintiff's fault in its answer; alternatively, Metro requested to amend its answer. A non-jury trial was held on April 10, 11, and 12. On the first day of trial, the court heard the motion in limine; the court denied Plaintiff's motion and allowed Metro to amend its answer to specifically assert comparative fault on the part of Plaintiff.

On May 9, 2012, the court entered a Final Order which stated in part:

> The Court finds that the Plaintiff was credible when she testified that she fell and was injured while incarcerated. . . . However, the Plaintiff did not establish that the Metropolitan Government breached its duty of care to her. Plaintiff's own witness, Mary Jo Thompson, said that the guard turned on the light in the jail cell when he took Plaintiff to the cell. Ms. Thompson later testified that it might have been the hall light. Regardless, Ms. Thompson testified that there was enough light in the cell for [Plaintiff] to see, and that Ms. Thompson and [Plaintiff] looked at each other. Ms. Thompson also testified that the guard had informed [Plaintiff] that she was to sleep in the bed on the floor ("the boat").
> Based on these facts, the Court concludes that the boat was visible when [Plaintiff] entered the cell, and the Metropolitan Government is not at fault for the Plaintiff falling when she tripped over the boat.

The court further held that, "Even if the Court had found that the boat was not visible due to the lighting in the cell, the Court would have found the Plaintiff to be more than 50% at fault for her own injuries."

Plaintiff appeals, stating the following issues:

I.      Whether the Trial Court committed error by allowing, on the morning of Trial, the Defendant Metropolitan Government, to amend its Answer and assert comparative fault against the Plaintiff Donna Williams for causing or contributing to her injuries despite waiving or failing to assert comparative fault upon Plaintiff Donna Williams for over two years of the litigation of this matter.

II.     Even if it is determined that it was appropriate to allow the Defendant to amend its Answer to assert comparative fault against the Plaintiff, whether the Trial Court committed error by failing to apply the appropriate standards and evaluation of comparative fault for injuries to a prisoner caused by and while in the custody and control of a jail facility as outlined in Cannon v. Loudon County, 199 S.W.3d 239 (Tenn. Ct. App. 2005).

III.    Whether the Trial Court committed error by failing to assess a damages verdict amount for the injury or pain and suffering of the Plaintiff, after the Trial Court ruled that a serious injury to Plaintiff Williams did occur, that causation of the injuries was proven, and that the $185,000 medical expenses proven were reasonable.

## II. Analysis

### A. Breach of Duty of Care

In order to prevail on a claim of negligence, the plaintiff must prove by a preponderance of the evidence the five essential elements of a claim of negligence: "(1) a duty of care owed by a defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause." *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 819 (Tenn. 2008); *Burks v. Kroger Co.*, M2008-02664-COA-R3-CV, 2009 WL 4059145, *4 (Tenn. Ct. App. Nov. 23, 2009). The trial court held that Plaintiff failed to establish that Defendant breached a duty of care it owed to her. Plaintiff has not appealed this holding; rather, Plaintiff focuses on the court's statement that, even if it had found that Metro breached a duty of care to Plaintiff, it would have found Plaintiff to be more than 50% at fault for her injuries. Metro raises the issue of whether the failure of Plaintiff to challenge the trial court's finding that it did not breach a duty owed to her amounts to a waiver of the

issue and pretermits the issues raised by Plaintiff.[1] The resolution of the issues raised by Plaintiff turns on whether the trial court erred in finding that Metro did not breach a duty of care owed to Plaintiff[2]; consequently, pursuant to our authority at Tenn. R. App. P. 36(b), we will address that holding first.

The duty of care owed incarcerated persons was succinctly stated in *Cannon v. Loudon Cnty.* as follows: ". . . jail officials, while not insurers of their prisoners' safety, have a duty to exercise ordinary and reasonable care to protect the life and health of the persons in their custody." *Cannon v. Loudon Cnty.*, 199 S.W.3d 239, 242 (Tenn. Ct. App. 2005) (citing *Cockrum v. State*, 843 S.W.2d 433, 436 (Tenn. Ct. App. 1992)). With respect to the breach of duty element of a claim of negligence our Supreme Court has held:

> Assuming a duty is owed, it must be determined whether defendant has exercised reasonable care under the circumstances. If defendant has not, the duty has been breached. In this regard, we have observed that "[t]he term reasonable care must be given meaning in relation to the circumstances. Ordinary, or reasonable, care is to be estimated by the risk entailed through probable dangers attending the particular situation and is to be commensurate with the risk of injury."

*McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 895 (Tenn. 1996) (citations omitted). Whether the defendants breached the duty is a question of fact. *Winkler v. Pinnacle Properties I, LLC*, M2011-02616-COA-R3-CV, 2012 WL 2989135, *4 (Tenn. Ct. App. July 20, 2012). In a non-jury case such as this one, we review the record de novo with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

---

[1] Metro contends that Plaintiff has waived the issue of whether Metro breached a duty of care owed to Plaintiff by failing to raise it on appeal. This Court explained in *Hawkins v. Hart*:

> In order for an issue to be considered on appeal, a party must, in his brief, develop the theories or contain authority to support the averred position as required by Tennessee Rules of Appellate Procedure 27(a). . . . Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals.

*Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001).

[2] As held in *Staggs v. Sells*, 86 S.W.3d 219, 224 (Tenn. Ct. App. 2001), a plaintiff must prove all elements of a claim of negligence in order for the principles of comparative fault to become applicable.

Plaintiff was housed in the L Pod of the DCCDC, an intake building that provided temporary housing for inmates who had not yet been assigned to other housing in the jail. The L Pod was composed of a large day room located in middle of the pod and two levels of cells which flanked the day room. The door to each cell opened to the day room and was composed of solid metal except for an eight to ten inch window. Each cell, which housed up to three inmates, contained a permanent bunk bed; some cells also contained a plastic cot on the floor, referred to as a boat. When inmates were processed into the jail, they were assigned to sleep on the bottom bunk or the top bunk, and were only assigned to sleep in the boat when the cell contained three inmates or when medical reasons necessitated.

Plaintiff's cell was located on the upper level and, when Plaintiff was first assigned to the cell, had one other occupant, Mary Jo Thompson. Officer Joel Huff, another correctional officer, testified that cell and bunk assignments were recorded in the jail computer system and the records showed that Plaintiff was assigned to sleep in the boat. Corporal Jason Weber, the correctional officer who escorted Plaintiff to her cell, testified that he had no specific recollection of Plaintiff but that his normal procedure, as he escorted a new inmate to her cell, was to instruct the inmate as to the specific bunk to which she was assigned. Ms. Thompson testified that she was assigned to sleep on the lower bunk and that the guard who escorted Plaintiff to her cell told Plaintiff that she would sleep in the boat on the floor.

Officer Huff testified that the pod where Plaintiff was housed was well lit; that the lights in the day room remained on at all times and were never dimmed; that the lights in each individual cell could be controlled by the inmates, but that the lights in the day room were sufficient to provide light to cells when the cell lights were turned off; and that one of the day room's overhead lights was located directly outside of the cell where Plaintiff was housed. Ms. Thompson testified that there was sufficient light in the cell that allowed her to see the Plaintiff at the time Plaintiff was brought into the cell.[3]

After being escorted to her cell, Plaintiff tripped over the boat located on the floor and suffered injuries to her neck and shoulder. With respect to her fall Plaintiff testified:

> He [Corporal Weber] opened the door and I'm going in talking to him. I never look in the pod [sic] and we're just having that discussion. As he was closing the door, I was stepping back like this [indicating] giving him room to close the door, and I'm still discussing my medication. And I stand there for

---

[3] Mrs. Thompson testified first that the guard turned the light in the cell on when he brought Plaintiff into the cell; she later testified that the light which allowed her to see Plaintiff may have come from the pod light coming in when the cell door was opened.

a moment or two, and as I turn, I turned around and bumped something with my leg, and I landed like that on my elbow.

Plaintiff testified that, when she was escorted to her cell, the day room lights were "dimmed because it was bedtime" and that she received no warning from the guard regarding the boat on the floor.

Applying the Tenn. R. App. P. 13(d) standard, the evidence does not preponderate against the trial court's finding that Metro did not breach the duty of care it owed Plaintiff. The evidence shows that Plaintiff was escorted to her cell, that she was instructed that she was to sleep on the boat which was located on the floor and that there was sufficient lighting in the cell. This is ordinary and reasonable care under the facts and circumstances presented and there is no evidence showing that anything Metro did or failed to do fell below a standard which would amount to a breach of its duty.[4]

## B. Issues Raised by Plaintiff

Having affirmed the holding that Metro did not breach its duty of care to Plaintiff, we need not reach the issues she raises with respect to the court's statement that it would find Plaintiff more than 50% at fault. *See Staggs v. Sells*, 86 S.W.3d 219, 224 (Tenn. Ct. App. 2001) ("[I]t is only after a plaintiff proves all the elements of a negligence claim that the principles set out in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn.1992), and *Bond v. Belle Meade Fund* are applicable."); *see also Stewart v. Seton Corp.*, No. M2007-00715-COA-R3-CV, 2008 WL 426458, *6 (Tenn. Ct. App. Feb. 12, 2008).

Likewise, our holding that Metro did not breach a duty owed to Plaintiff is dispositive of her contention that the trial court erred in allowing Metro to amend its answer to assert comparative fault on the part of Plaintiff.

Lastly, Plaintiff contends that, because the trial court found that she suffered an injury in the jail, the court should have "assessed a damages verdict." This contention is without merit. In order to recover damages for the injury she sustained, it was necessary for Plaintiff to prove the elements of negligence; the threshold requirement for an award of damages. *See Burton v. Warren Farmers Co-op*, 129 S.W.3d 513, 522–23 (Tenn. Ct. App. 2002) ("A

---

[4] *Cannon v. Loudon Cnty.*, 199 S.W.3d 239, 242–43 (Tenn. Ct. App. 2005), in which this Court affirmed the trial court's holding that the county was at fault for Mr. Cannon's injury while in the jail, is distinguishable from the case at bar. In *Cannon*, testimony and jail logs showed that there was a ongoing dangerous condition-water on the jail floor caused by a leaky roof-of which correctional officers were aware, but failed to take any remedial action. *Id.* The facts here do not support such a finding.

plaintiff pursuing a negligence claim must prove more than injury or damage.").  Thus, we find no error in the failure to award damages where Plaintiff failed to prove her entitlement thereto.

### III. Conclusion

For the forgoing reasons, we affirm the judgment of the trial court.


_____
RICHARD H. DINKINS, JUDGE