# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 17, 2016 Session

## LINDA K. GUTHRIE v. RUTHERFORD COUNTY, TENNESSEE, ET AL.

**Appeal from the Circuit Court for Rutherford County**
**No. 63743     Howard W. Wilson, Chancellor**
_____

**No. M2015-01718-COA-R3-CV – Filed December 15, 2016**
_____

Plaintiff, a special education assistant, was injured at work when two middle school students were roughhousing in a school hallway and one was pushed into her, causing her to fall. She sued Rutherford County for negligence, pursuant to the Tennessee Governmental Tort Liability Act, alleging that, *inter alia*, her injuries were caused by the County's failure to properly supervise the students, whom she also sued. After a bench trial, the court rendered judgment in favor of the defendants. Plaintiff appeals the judgment with respect to the County, contending that the court erred in holding that the County was immune from suit, that the evidence preponderated against certain findings of the court, and that the court erred in concluding that the County's agents had not acted negligently. Discerning no error, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

R. Steven Waldron, Murfreesboro, Tennessee; and K. Cody Allison, Nashville, Tennessee, for the appellant, Linda K. Guthrie.

E. Evan Cope, Murfreesboro, Tennessee, for the appellees, Rutherford County, Tennessee, et al.

## OPINION

## I. FACTUAL AND PROCEDURAL HISTORY

On November 3, 2010, Linda K. Guthrie ("Plaintiff"), a special education assistant employed at Smyrna Middle School in Rutherford County, was walking in a common

area of the school while students were changing classes. As two sixth-grade boys were roughhousing, one boy was pushed into Plaintiff, causing her to fall and fracture her left hip and wrist. She was taken to the emergency room and admitted to the hospital, where she underwent surgery for both injuries; she received approximately three weeks of physical therapy and lost substantial time from work.

Plaintiff filed suit against Rutherford County on October 20, 2011, pursuant to the Tennessee Governmental Tort Liability Act ("TGTLA"), alleging that the County owed her "a duty of ordinary care to avoid injury to her in the manner in which she was injured" and "violated this duty by the failure of its agents to properly supervise the students . . . and . . . to enforce school rules." She alleged that these "violations constitute the proximate cause of the accident" resulting in her injuries. Plaintiff alleged that the County's immunity from suit was removed pursuant to Tennessee Code Annotated section 29-20-205 "because Plaintiff's injuries were proximately caused by the negligent actions of individuals who were under the control of the Defendant." She alleged that she "suffered serious personal injuries, physical and mental pain and suffering, lost enjoyment of life, and substantial medical bills were incurred at reasonable cost for necessary medical treatment which have, to date, been paid by Defendant Rutherford County," as well as "suffered lost wages/income and a loss in her ability to earn income." She amended her complaint on November 2, 2011, to add the students who had been roughhousing and their parents as defendants, seeking damages of $10,000 from each parent and $350,000 "individually, jointly and severally" from the County and the two students. Plaintiff amended her complaint a second time, adding allegations that her injuries were the result of the County's breach of its duty of care to furnish her a reasonably safe place to work. Answers were filed on behalf of the County and one of the students.[1] Plaintiff subsequently non-suited her claims against the parents.

In due course, the County moved for summary judgment, asserting that it was immune from suit in accordance with the discretionary function exception to the TGTLA. The court denied the motion, holding that disputed questions of fact existed "as to whether Defendant violated its policy for having its agents supervise middle school children while they changed classes, and, if [so] . . . , whether that violation constitutes the cause in fact and legal cause of Plaintiff's accident and resulting injuries."

A non-jury trial was held on August 5, 2015 at which the following witnesses testified on behalf of the Plaintiff: Kevin Wright, Plaintiff's son; Janet McCormick, Plaintiff's daughter; Jason Crutchfield, who had been a teacher and coach at Smyrna Middle School, and at the time of trial, was an assistant principal there; Glenee Jones, formerly an art teacher at the school; Leo Martin, retired assistant principal; Danielle

---

[1] With its Answer to the Second Amended Complaint, the County filed a cross-claim against the parents. The "Order from Pre-Trial Conference," entered on August 5, 2015, noted that "the County non-suited its cross-claim against [the students' parents]."

Castro, one of the students whose horseplay resulted in the Plaintiff's fall; and the Plaintiff. Kirkland Berry, the other student whose horseplay injured the plaintiff, testified on his own behalf. Eight exhibits were entered into evidence: a diagram of the school drawn by Ms. Jones; a witness statement prepared by Mr. Crutchfield; a supervisor's report signed by Mr. Martin; an employee statement signed by Plaintiff; a listing of medical bills; mortality tables; and photographs of Kirkland Berry and Danielle Castro.

In a Memorandum and Order entered August 10, 2015, the court rendered judgment in favor of the defendants. The court held that the students were "incapable of acting negligently and could not be held liable for the injuries sustained by the Plaintiff."[2] The court held that the County was immune because the "allegations raised by the Plaintiff . . . involve[] the County's discretionary acts in planning and policy-making concerning school safety." The court rejected Plaintiff's argument that immunity had not been pled and held that "[e]ven if . . . immunity was not properly pled by the County or such a defense was not applicable, it would be the Court's opinion that the County did not act negligently." Plaintiff appeals, stating the following issues:

1. Whether the Trial Court committed reversible error by finding/ruling that Defendant Rutherford County had properly raised in its Answer that immunity had not been waived because Defendant's policy of requiring teachers to stand in their classroom doors and monitor the hallways during class changes was a discretionary policy or act?
2. Whether the Trial Court committed reversible error by finding and ruling that Defendant Rutherford County's policy of requiring teachers to stand in their classroom doors and monitor the school hallways during class changes is a "discretionary" policy for which immunity, pursuant to the Governmental Tort Liability Act (GTLA)[,] has not been removed?
3. Whether the Trial Court committed reversible error by finding Plaintiff had not proven that Rutherford County agents had violated school policy by failing to have someone in place to monitor children in the hallways during class change in the area where Plaintiff fell?
4. Whether the Trial Court committed reversible error by finding that Plaintiff had not established that one or more agents of Defendant Rutherford County were absent from their assigned posts at the time of Plaintiffs accident?
5. Whether the Trial Court committed reversible error by finding that Rutherford County had not acted negligently with reference to Plaintiff's accident?
6. Whether the Trial Court committed reversible error by finding "that the infusion of more teachers into the hallways of Smyrna Middle School at the time of class change would not have prevented Plaintiff's injury"?
7. Whether the Trial Court committed reversible error by finding Rutherford County

---

[2] Plaintiff does not challenge the court's holding that the students were incapable of negligence, and they are not involved in this appeal.

was not guilty of proximate negligence with reference to Plaintiff's accident and injuries resulting therefrom?

8. Whether this Honorable Court should make a finding that Defendant is 100% at fault for the accident in which Plaintiff was injured?

9. Whether this Honorable Court should direct the entry of a judgment for Plaintiff for $300,000.00 which is the maximum allowed by the GTLA, but against which Defendant would have credit for medical bills paid in the amount of $63,579.55?

## II. STANDARD OF REVIEW

The judgment was rendered after a non-jury trial and "is subject to our *de novo* review upon the record of the proceedings below. Tenn. R. App. P. 13(d) mandates that there is a presumption that the trial court's findings of fact are correct, and we must honor that presumption unless the evidence preponderates to the contrary." *Cannon v. Loudon Cty.*, 199 S.W.3d 239, 241 (Tenn. Ct. App. 2005) (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)). For the evidence to preponderate against the trial court's factual finding, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 70–71 (Tenn. Ct. App. 2000). We afford no presumption to the correctness of the court's conclusions of law. *Cannon*, 199 S.W.3d at 241 (citing *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996)).

## III. ANALYSIS

We first address Plaintiff's contention that the trial court erred in ruling that the County properly pled immunity as an affirmative defense. Plaintiff asserts that "discretionary function [immunity] is an affirmative defense that should be pled and for which the Defendant should have the burden of proof" and that "[t]here is no provision in the [T]GTLA that excuses defendants from compliance with [Tennessee] Rule [of Civil Procedure] 8.03."

This Court has held that "[t]he TGTLA forecloses suits against governmental entities that cause injury when exercising or discharging their duties." *Young v. Washington Cty.*, No. E2011-02189-COA-R3-CV, 2012 WL 5293097, at *5 (Tenn. Ct. App. Oct. 29, 2012). Immunity under the TGTLA is waived in certain situations, as provided in Tennessee Code Annotated sections 29-20-202 – 205. In cases brought pursuant to the TGTLA, . . . "[b]efore proceeding in an action against a governmental entity, the threshold issue of waiver of governmental immunity must be addressed." *Brown v. Hamilton Cty.*, 126 S.W.3d 43, 46 (Tenn. Ct. App. 2003). Because the question of whether the immunity has been removed from the entity being sued is a threshold determination that must be resolved in every TGTLA case in order to proceed to the merits of the case, we do not deem it necessary that it be specially pled as an affirmative defense. Tenn. R. Civ. P. 8.03.

4

Moreover, in the case at bar, the County denied the allegation in the complaint that "Governmental Immunity for Plaintiff's claim is removed pursuant to T.C.A. § 29-20-205 because Plaintiff's injuries were proximately caused by the negligent actions of individuals who were under the control of the Defendant." In addition, as the fifth defense raised, the County averred "that it [wa]s immune from suit pursuant to the Tennessee Governmental Tort Liability Act and Public Duty Doctrine." The Plaintiff was on notice that the County would be asserting that immunity was not removed; accordingly, we affirm the trial court's holding that immunity was properly pled.

We next address whether the County's immunity was removed pursuant to the TGTLA. In *Parsons v. Wilson County*, this Court stated:

> Tenn. Code Ann. § 29-20-201 codifies the common law rule that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities." Exceptions to this immunity are set forth at Tenn. Code Ann. §§ 29-20-202 – 205. Tenn. Code Ann. § 29-20-205(1) provides:
>
> > Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
> >
> > (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused; ...
>
> The TGTLA does not define the term "discretionary function," but our Supreme Court, in *Bowers v. City of Chattanooga*, 826 S.W.2d 427 (Tenn. 1992), adopted the planning-operational test to assist courts in analyzing whether the negligent act or omission of the governmental entity at issue in the case is a discretionary function. *Bowers*, 826 S.W.2d at 430-31. Under the planning-operational test, courts are to distinguish governmental acts that are performed at the "planning" level from those performed at the "operational" level:
>
> > [D]ecisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity.
>
> *Bowers*, 826 S.W.2d at 430.

5

*Parsons v. Wilson Cty.*, No. M2014-00521-COA-R3-CV, 2015 WL 5178601, at *3 (Tenn. Ct. App. Sept. 3, 2015). This court has previously addressed the discretionary function exception to the TGTLA in the context of a school principal's decision to assign teachers to monitor certain classes and areas in *Chudasama v. Metro. Gov't of Nashville & Davidson County*, in which a student was injured when a fight broke out in an unsupervised locker room after a teacher dismissed the student from class early in violation of a school rule. We concluded that the principal's decision to not assign additional teachers to the gym class was in the exercise of a discretionary function and immunity was not removed, stating:

> In lifting the immunity from suit of governmental entities for negligent acts of its employees, the Governmental Tort Liability Act excepts injury which "[a]rises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not that discretion is abused." Tenn. Code Ann. § 29-20-205(1). The assignment of teachers appears to be just such a discretionary function.
>
> We cannot find Metro Government liable for injuries that may have resulted from [the principal's] efforts to allocate the limited resources under his control to meet the broad supervisory and instructional needs of the student body. . . .

914 S.W.2d 922, 925 (Tenn. Ct. App. 1995).

> In the case at bar, the trial court held:

> > The allegations raised by the Plaintiff against the County involve the County's discretionary acts in planning and policy-making concerning school safety. The County's "discretionary" policy of requiring teachers to stand in their classroom doors and monitor the school's hallways is an act that is certainly contemplated by the immunities granted by the [T]GTLA.

It is undisputed that the school administrators established the policy to monitor the students as they changed classes; Plaintiff concedes in her brief that "the formulation of the policy was a discretionary act." Assistant Principal Martin, Mr. Crutchfield, Plaintiff, and Ms. Jones testified as to the specifics of the policy.[3] Assistant Principal Martin testified that "[t]he principal set a standard about teachers being in the hallway . . . to deter any roughhousing or horseplay and to keep kids and teachers safe"; the policy required the teacher "to stay right at the entrance [to the classroom] in the hallway, where

---

[3] No written policy was entered into evidence, and the County's response to Plaintiff's request for the production of the policy stated that "Defendant is not in possession of any of the documents referenced."

6

they can see inside the room and . . . the hall." Mr. Martin testified that the policy did not require the gym teacher's presence at the doorway of the gym during class changes when the teacher "had issues with students or teachers during that time." Mr. Crutchfield testified that "[w]hen the bells dismiss the children, teachers are to move to their doorways and be visible in the hallway and the classroom to kind of monitor[] both as children walk in and out and just assess[] kids as they move through the hall to make sure they get to the next class." Ms. Jones testified that "[t]he policy was to be in your doorway as much as you possibly could, to be watching the hallway and to be able to see into your classroom." The Plaintiff testified that she was told about the policy and that as an educational assistant, she was sometimes assigned to monitor certain areas.

The monitoring plan was the result of decisions as to how best to deter horseplay and monitor student behavior, which is a discretionary function. While Plaintiff testified that she believed that a teacher should have been present in the hallway where she fell, the decision to not assign a teacher in the hallway was a planning decision related to this discretionary function. *See Bowers,* 826 S.W.2d at 431 (holding that "[a] planning decision frequently requires a governmental entity to create policies or plans, formulate specifications or schedules, allocate resources, or determine priorities"). Tennessee Code Annotated section 29-20-205(1) provides that immunity is removed for negligent acts of employees except when the injury arises out of the exercise of a discretionary function. *See id.,* 826 S.W.2d at 430 (holding that "decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability"); *Hill v. Lamberth,* 73 S.W.3d 131, 135 (Tenn. Ct. App. 2001) (holding that a principal's decision about school security was a discretionary one and "inappropriate" for "judicial second-guessing"). Accordingly, we proceed to address Plaintiff's argument that "the [hallway monitoring] policy was not implemented or followed, and . . . the failure to follow established policy is an operational act for which immunity has been removed."

As noted in *Parsons*, operational decisions are not entitled to immunity. Our Supreme Court explained the distinction between discretionary and operational decisions in *Limbaugh v. Coffee County Medical Center*:

> [D]ecisions that merely implement pre-existing policies and regulations are considered to be operational in nature and require the decision-maker to act reasonably in implementing the established policy. If the policy, regulation, or other standard of procedure mandates specific conduct, then any employee reasonably complying with that direction will not abrogate the entity's immunity if the action furthers the underlying policies of the regulation. *See generally Chase v. City of Memphis,* 971 S.W.2d 380, 384 (Tenn. 1998). If such an employee does not act reasonably but pursues a course of conduct that violates mandatory regulation, the discretionary function exception will not apply because the action would be contrary to

7

the entity's established policy. *Id.; see also Gaubert,* 499 U.S. at 324, 111 S. Ct. 1267.

59 S.W.3d 73, 85 (Tenn. 2001); *see also Haney v. Bradley Cnty. Bd. of Educ.,* 160 S.W.3d 886, 900 (Tenn. Ct. App. 2004). Relative to Plaintiff's contention in this regard, the trial court held:

> Even if the Court were to find otherwise and determine that immunity was not properly pled by the County or such a defense was not applicable, it would be the Court's opinion that the County did not act negligently. First, there is scant evidence to show that the School violated its own policy by failing to place someone in the area where the Plaintiff fell. Not only was the Plaintiff herself someone who was commonly tasked with monitoring children during class changes, the Plaintiff cannot establish that anyone was absent from their assigned posts at the time of the incident. The Plaintiff did elicit testimony that touched on the subject of whether a coach or other person should have been present at the gymnasium door proximate to the site of the fall; however, this testimony did not definitively state whether or not someone was present but only that someone "should" have been present.

Plaintiff contends that this finding is unsupported, arguing that "the preponderance of the evidence established that the two PE teachers who should have been in the gym doorways were not where they should have been." Plaintiff cites to the testimony of Mr. Martin, Mr. Crutchfield, Ms. Jones, and her own testimony, as well as the county's answers to Plaintiff's interrogatories that Mr. Crutchfield "was present at the site of the accident," to support her argument.

Exhibit 1, a diagram of the common area prepared by Ms. Jones, showed that Plaintiff fell in an area in front of a concession stand which adjoined the gymnasium; the cafeteria adjoined the common area, and a ramp from several classrooms on a lower level led to the area. Coach Crutchfield testified that he left his classroom on the lower level and had moved to the top of the ramp to keep students from congregating on the ramp; that the top of the ramp was approximately 20 to 25 feet from the location of the injury; and that he saw the Plaintiff fall as he was walking up the ramp. He testified that "[a]s she fell, I then went to her, noticed, you know, she was in pain, called a code blue which then brought in all our first responders and our nurse and everybody." Ms. Jones testified that she was not present when Plaintiff fell because her classroom is not near the concession stand but appeared shortly after because Ms. Jones was a "first responder." Plaintiff testified that she did not recall seeing any teachers in the area where she fell. Mr. Crutchfield testified that he did not see another teacher in the area where Plaintiff fell until he called the code blue, and that "[a]s soon as I called for the help, [the PE teachers] came right there."

8

Mr. Martin testified that the policy does not require that the gym teachers be present at the doorway of the gym during class changes when the teacher "had issues with students or teachers during that time"; thus, a teacher is not required to be present at his or her post at all times. While no witness testified to seeing a gym teacher at the entrance to the gym when Plaintiff fell, this does not establish a violation of the policy, as the absence of a teacher from that area is permitted under the policy. Plaintiff's proof was insufficient to prove that gym teachers failed to follow the policy or were negligent in doing so;[4] in the absence of such proof, the County's immunity was not abrogated. *See Limbaugh*, 59 S.W.3d at 85-86 (stating that "if the policy, regulation, or other standard of procedure mandates specific conduct, then any employee reasonably complying with that direction will not abrogate the entity's immunity if the action furthers the underlying policies of the regulation").[5]

---

[4] In this regard, Plaintiff testified that she did not fault any teacher with violating the policy:

> Q. You don't believe that somebody, some personnel member or staff member at your school did something wrong in relation to your fall, do you?
> A. Yes. I believe there should have been somebody present in front of the hallway where I fell, in the gym, by the gym.
> Q. So whose fault is that? Who are you blaming this on?
> A. Well, the school board policy about teachers being in the hallway.
> ***
> Q. You are not blaming or faulting any of your faculty members for doing something wrong, are you? Is there a specific faculty member you are saying should have stopped happening to you what happened to you?
> A. Okay. The question you asked me was: Is there any specific faculty member that should have been there- -
> Q. Yes, ma'am.
> A. - - to stop that?
> Q. Correct.
> A. I'm not faulting -- no. I'm not faulting any one of them.
> Q. Okay. So then your beef or your complaint is with the administration?
> A. My problem is that the policy that you have in order of the school for, you know, keeping us safe in the hallway was not -- on that day was not accomplished, was not met where I fell.

[5] In her brief, Plaintiff contends that the County's failure to call the gym teacher as a witness should invoke the "absent material witness" rule stated at Tennessee Pattern Jury Instructions, "Absence of Witness or Evidence," 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 2.04 (2016 ed.). In her closing argument at trial, Plaintiff urged the court to make a negative inference from the fact that Mr. Hockenberry, the gym teacher, did not testify. The instruction requires that a party prove six elements in order to be entitled to the benefit of the rule. In the argument section of her brief, Plaintiff does not explain how the proof established each element, and upon our review, we find no basis to conclude that a negative inference should have been made from the fact that the County did not call the gym teacher as a witness.

The trial court made an alternate holding that the County was not negligent, which Plaintiff appeals. To prevail on her claim, Plaintiff was required to prove the following elements of negligence: "1) a duty of care owed by the defendant to the plaintiff; 2) conduct falling below the applicable standard of care amounting to a breach of that duty; 3) an injury or loss; 4) causation in fact; and 5) proximate, or legal, cause." *King v. Anderson Cty.*, 419 S.W.3d 232, 246 (Tenn. 2013) (citing *Giggers v. Memphis Hous. Authority*, 277 S.W.3d 359, 364 (Tenn. 2009)).

Plaintiff contends that the County "violat[ed] its duty to provide her a safe place to work as required by the *Overstreet* [*v. Norman*, 314 S.W.2d 47 (Tenn. Ct. App. 1987)] principles and because it did not follow its own policy." We have held that the proof does not establish that any teacher failed to follow the policy or acted negligently; thus there is no proof that the County violated the duty Plaintiff asserts she was owed. Having failed in this regard, Plaintiff did not establish the elements necessary to sustain a claim of negligence.

## IV. CONCLUSION

For foregoing reasons, we affirm the judgment of the trial court in all respects.

_____
RICHARD H. DINKINS, JUDGE

10